UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| ANTHONY IRVING BURRELL | NO. 20-00054-BAJ-SDJ |

### RULING AND ORDER

Before the Court is Defendant's **Motion to Suppress (Doc. 34).** The Motion is opposed. (Doc. 38). The Court conducted an evidentiary hearing on the matter. For the reasons stated herein, the Motion is **DENIED.**

I.  BACKGROUND

Defendant was charged with a six-count Indictment for two separate instances of alleged criminal conduct. (Doc. 11). The first instance, pertaining to Counts One through Three, allegedly occurred on April 8, 2020. (Doc. 38, p. 1). The second instance, pertaining to Counts Four through Six, allegedly occurred on July 30, 2020. (*Id.*). Defendant's Motion to Suppress addressed all six Counts of the Indictment. (Doc. 34). After the evidentiary hearing, the Government moved to dismiss Counts Four, Five, and Six of the Indictment. (Doc. 41). The Court granted the Motion. (Doc. 42). Accordingly, the only contested issue pertains to Counts One, Two, and Three, which arose from a search that occurred on April 8, 2020.

On that date, officers of the Baton Rouge Police Department responded to 855 N. Donmoor Avenue based on an anonymous call reporting that a black male

wearing a red hat, white tank top, and blue jeans was walking with another male with dreadlocks while flashing a gun at children. (Doc. 34-1, p. 1; Doc. 34-2). Officer A. Alvarez testified that the tipster stated that the male either pointed a gun at children or flashed a gun at children. The male with the red hat was later identified by officers as Defendant. (Doc. 34-1, p. 1). The male with dreadlocks is not a defendant in this matter. (*Id.*).

Upon arriving at Donmoor Avenue, Officer Alvarez saw Defendant and another individual walking along the roadway. (*Id.*). Officer Alvarez jumped out of his patrol unit, drew his weapon, and gave a loud command for both individuals to lay on the ground. (*Id.*). Both men immediately complied. (*Id.*). Officer Alvarez maintained control over Defendant while Officer D. Steele arrived, advised Defendant of his rights per *Miranda*, and conducted a search of Defendant. (*Id.*). The search revealed a handgun and narcotics, which are the subject of Counts One, Two, and Three of the Indictment. (*Id.*). The Government alleges that the officers located approximately 4 grams of marijuana, 4.3 grams of crack cocaine, a digital weighing scale, a Glock, Model 21, .45 caliber, semi-automatic pistol, and nine-hundred dollars in cash. (Doc. 38, p. 2; Doc. 1, p. 3). The search and arrest of Defendant occurred without a warrant. (Doc. 34-1, p. 1).

## II. LEGAL STANDARD

Warrantless arrests must be based upon probable cause. *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment

of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Id.* (citations and quotations omitted). The police officer's knowledge must establish only a "fair probability that a crime occurred." *United States v. Nunez–Sanchez*, 478 F.3d 663, 666–67 (5th Cir. 2007) (citation and quotation omitted). Because the probable cause requirement does "not demand any showing that such a belief is correct or more likely true than false," *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion of Rehnquist, C.J.)), an officer must rely on "something more than a bare suspicion, but need not reach the fifty percent mark." *Nunez–Sanchez*, 478 F.3d at 667 (citation and quotation omitted). When considering what a reasonable person would have concluded, courts take into account the expertise and experience of law enforcement officials. *Id.* (citation and quotations omitted).

Where the defendant was arrested or subject to search without a warrant, the Government bears the ultimate burden of proof to justify the warrantless search. *United States v. Garcia-Lopez*, 809 F.3d 834, 838 (5th Cir. 2016).

### III. DISCUSSION

#### a. Parties' Arguments

Defendant argues that because there was no reasonable suspicion of criminal activity warranting the detention of the Defendant, any evidence obtained from his unlawful detention on April 8, 2020 should be suppressed. (Doc. 34-1, p. 4). Officer Alvarez arrived at the scene, immediately drew his weapon, and gave a loud

command for Defendant to lay on the ground. (*Id.*). By ordering Defendant to the ground and preventing him from leaving, Officer Alvarez detained the men simply because they were walking down the street. (*Id.*). Defendant should not have been detained without some reliable evidence that he was engaged, or had been engaged, in criminal activity. (*Id.*).

Additionally, Defendant argues that relevant jurisprudence requires an anonymous tip to be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. (*Id.* (citing *Florida v. J.L.*, 529 U.S. 266 (2000)). Because Officer Alvarez cannot point to any reasonable suspicion of illegal activity that he actually observed when he saw Defendant, but rather, Defendant just happened to be near the location identified by the anonymous caller, the subsequent detention and search of Defendant were unlawful. (Doc. 34-1, p. 4). Any evidence obtained should be suppressed. (*Id.*).

Contrarily, the Government argues that the standard to be applied is probable cause. (Doc. 38, p. 4). Specifically, the Court should look to whether Defendant had committed, was committing, or was about to commit a crime. (*Id.*). Considering the anonymous call, the detailed physical descriptions provided therein, and the items located and seized from Defendant's person, the officers had the requisite reasonable suspicion to approach Defendant and to "better ascertain what was going on." (*Id.*). Given the volatile nature of the circumstances—men pointing firearms at children—the resulting pat-down search of Defendant's clothing confirmed that he possessed a

4

firearm, converting the investigation from one based on reasonable suspicion to one based on full blown probable cause to arrest Defendant. (*Id.*).

### b. Classification of Detention

Here, the initial step is to classify the detention of Defendant as one of the following: (1) a mere approach by law enforcement; (2) an investigatory stop, which would require the officers to have had reasonable suspicion; or (3) an arrest, which would require probable cause. *See United States v. Norbert*, 432 F. Supp. 3d 705, 712 (S.D. Miss. 2020). The Court classifies this detention as an arrest because officers immediately ordered Defendant on the ground, held Defendant at gunpoint, and advised Defendant of his *Miranda* rights. Additionally, Officer Alvarez testified that he held Defendant at gun point, gave verbal commands, and "effected arrest." An arrest occurs when, in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017) (internal citations omitted). It is clear from a review of the video evidence that Defendant would have believed he was not free to leave. Accordingly, this was a warrantless arrest.

A warrantless arrest must be supported by probable cause. *Id.* at 841–42. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* at 842 (internal citations omitted).

### c. Reliability of Anonymous Tip

The issue here is whether an anonymous tip informing officers that a black male wearing a red hat, white tank top, and blue jeans walking with another male with dreadlocks while flashing a gun at children is sufficiently reliable to justify the warrantless arrest of Defendant. (Doc. 34-1, p. 1; Doc. 34-2). The Court holds that, under the totality of the circumstances, the tip was sufficiently reliable to provide the officer with probable cause that the Defendant had committed or was committing a crime—flashing a gun at children.

In *Florida v. J.L.*, a factually similar case, the United States Supreme Court examined whether "an anonymous tip that a person is carrying a gun is, without more, sufficient to justify a police officer's stop and frisk of that person." 529 U.S. 268, 268 (2000). The Court held that it is not. *Id.* In *J.L.*, an anonymous caller reported to the police that a "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* Analogous with the instant case, there was no audio recording of the tip and nothing was known about the informant. *Id.*

The officers arrived at the bus stop and saw "three black males just hanging out there." *Id.* (internal quotations omitted). Respondent J.L. was wearing a plaid shirt. *Id.* Apart from the tip, the officers had no reason to suspect illegal conduct. *Id.* The officers did not see a firearm, and Respondent J.L. made no threatening or otherwise unusual movements. *Id.* One of the officers approached J.L., frisked him, and seized a gun from his pocket. *Id.* The Court held that an anonymous tip lacking

6

indicia of reliability does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm. *Id.* at 274.

The *J.L.* Court explained that "predictive information" is a manner to test the informant's knowledge or credibility. 529 U.S. 268, 271 (2000); *see also Alabama v. White,* 496 U.S. 325, 325 (1990) (holding that the officers' corroboration of certain details made the anonymous tip sufficiently reliable to create reasonable suspicion of criminal activity.). The Court stated in *Florida v. J.L.*:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

529 U.S. at 272.

Here, the anonymous tipster provided no predictive information, but provided a description of Defendant, Defendant's location, and his alleged observation of criminal activity. Officer Alvarez testified that he did not conduct any independent investigation or speak with any witnesses before stopping Defendant, but rather, identified Defendant solely based on the tipster's description. Upon arriving at the scene, Officer Alvarez did not make any inquiry regarding Defendant's name or whether he had any weapons. Officer Alvarez testified that his main concern was for officer safety and for the safety of the public. Accordingly, the lack of corroboration by Officer Alvarez, coupled with the lack of predictive information provided by the tipster, leans against the tipster's reliability in this case.

Notably, however, the instant case is distinguishable from *J.L.* In *J.L.*, the tipster did not explain how he knew about the gun, nor did he provide any basis to conclude that he had actually seen the gun. *Id.* at 271; *see also Navarette v. California*, 572 U.S. 393, 399 (2014). The *J.L.* Court noted that the anonymous tip at issue did not indicate that the tipster had knowledge of concealed criminal activity. 529 U.S. at 272. Here, the tipster allegedly observed Defendant engaged in criminal activity—flashing a gun at children—necessarily implying that the tipster observed both the gun and criminal activity.

In another comparable case, *Navarette v. California*, the Supreme Court held that a traffic stop made in response to a 911 call complied with the Fourth Amendment because, under the totality of the circumstances, the officer had reasonable suspicion that the truck's driver was intoxicated. 572 U.S. at 395. There, a 911 caller reported that a vehicle had run her off the road. *Id.* The officer located the vehicle identified by the caller and executed a traffic stop. *Id.* Petitioners moved to suppress the evidence, arguing that the traffic stop violated the Fourth Amendment because the officer lacked reasonable suspicion of criminal activity. *Id.* at 396. The Court concluded that the behavior alleged by the tipster, "viewed from the standpoint of an objectively reasonable police officer, amount[s] to reasonable suspicion" of criminal activity. *Id.* at 401–02.

In examining whether the 911 call was sufficiently reliable, the Court noted that "the caller necessarily claimed eyewitness knowledge of alleged dangerous driving." *Id.* at 399. "That basis of knowledge lends significant support to the tip's

8

reliability." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983) ("[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case"); *Spinelli v. United States*, 393 U.S. 410, 416 (1969) (a tip of illegal gambling is less reliable when "it is not alleged that the informant personally observed [the defendant] at work or that he had ever placed a bet with him")). The *Navarette* Court differentiated the 911 call from the *J.L.* tip, "where the tip provided no basis for concluding that the tipster had actually seen the gun," and concluded that the *Navarette* 911 call created reasonable suspicion of an ongoing crime. *Navarette*, 572 U.S. at 399, 402 (citing *Florida v. J.L.*, 529 U.S. 268, 271 (2000)). In the instant case, the tipster similarly claimed eyewitness knowledge of the alleged ongoing crime. That basis of knowledge lends significant support to the tip's reliability. *See id.* at 399.

The *Navarette* Court also looked to the timeline of events when determining the caller's veracity. *Id.* at 399–400. The Court determined that the timeline suggested that the tip was relatively contemporaneous with the observation of criminal activity or made under the stress of excitement caused by a startling event, which were considerations weighing in favor of the caller's veracity. *Id.* (explaining that a sort of "contemporaneous report has long been treated as especially reliable. In evidence law, we generally credit the proposition that statements about an event and made soon after perceiving that event are especially trustworthy because

9

'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'").

Here, Officer Alvarez testified that he was only a mile away from the location reported by the tipster, Donmoor Avenue, at the time the call was relayed to him, and he immediately drove to the reported location. The Defendant was present in the location identified by the tipster. Accordingly, the tipster's contemporaneous account leans in favor of the tipster's veracity.

Additionally, the *Navarette* Court concluded that the fact that the anonymous caller used the 911 emergency system served as an indicator of veracity. *Id.* at 400. The Court noted that a 911 call has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity. *Id.* Here, the Government asserts that the anonymous tip came from a 911 call. (Doc. 38, p. 1). The police report, however, identifies an "anonymous caller" without indicating whether the 911 emergency system was used. (Doc. 34-2). Officer Alvarez testified that he did not know whether this report came from a 911 call. Rather, the report was dispatched to Officer Alvarez using a computer system and radio. Accordingly, the Court cannot rely on the 911 emergency system as an indicator of veracity.

In *United States v. Gomez,* the United States Court of Appeals for the Fifth Circuit held that the district court did not err in finding that officers were justified in stopping and searching defendant's vehicle. 623 F.3d 265, 267 (5th Cir. 2010). There, police received a 911 call from an individual who identified

10

himself as "Mike." *Id.* The caller reported "an unidentified Hispanic man around twenty years of age and weighing 175 to 180 pounds brandishing a 'black and gray' pistol and threatening individuals at a 'little yellow gas station' on 'the corner of Ceaser [sic] Chavez and Comal.'" *Id.* Mike also told the operator that "the man had entered a black Honda SUV, license plate T80PDW, with a white female driver and black male front-seat passenger." *Id.*

To determine whether the 911 call provided reasonable suspicion to justify a stop, the Fifth Circuit considered the following factors: (1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip or report; (3) the extent to which the information in the tip or report can be verified by officers in the field; and (4) whether the tip or report concerns active or recent activity or has instead gone stale. *Id.* at 269 (citing *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007)). The court noted that if a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based on the remaining factors. *Id.* (citing *Martinez*, 486 F.3d at 862). Further, the court explained that an anonymous informant's ability to describe a person's appearance and location is insufficient, without more, to create a reasonable suspicion of criminal activity. *Id.* (citing *Martinez*, 486 F.3d at 863).

The Fifth Circuit held that, even assuming the *Gomez* caller was an anonymous tipster, the officers had reasonable suspicion in light of the remaining factors. *Id.* at 270. The court distinguished *Gomez* from *J.L.* because the *Gomez* caller

did not report a concealed weapon. *Id.* Rather, the *Gomez* caller saw someone pull out a pistol in public at a nearby gas station. *Id.* at 270–71. One of the officers testified that he "viewed the situation as potentially exigent given that the facts provided by [the caller] could be construed as describing anything from showing off a new gun to a carjacking." *Id.* at 271. The court stated that viewing the officer's action as prohibited by *J.L.* "would be to require officers to investigate citizens availing themselves of the important service provided by 911 dispatchers before intervening to apprehend individuals suspected of committing open criminal acts in the community." *Id.* The court concluded that "*J.L.* does not mandate such a perverse outcome." *Id.* Ultimately, the *Martinez* factors "could and did validate the officers' reasonable suspicion justifying the stop of [defendant] Gomez's vehicle." *Id.*

The instant case is similar to *Gomez*. While the Court cannot evaluate the reliability of the anonymous informant, the information contained in the report was specific. The tipster described the Defendant and his location with particularity. The report described recent activity indicating some exigency regarding an alleged open criminal act in the community. *Id.*; *see also United States v. Booker*, No. 4:16-CR-00113, 2016 WL 7471322, at *4 (N.D. Miss. Dec. 28, 2016) (noting that the anonymous tip at issue "concerned ongoing conduct—the carrying of a firearm," and ultimately holding that the Fifth Circuit's multi-factor reasonable suspicion test was satisfied). Additionally, Officer Alvarez testified that the tipster indicated that the Defendant either pointed a gun at children or flashed a gun at children. Just as the *Gomez* call could be construed as describing anything from "showing off a new

gun to a carjacking," the tip here could have been construed as anything from Defendant briefly making it known that he had a gun to holding children at gunpoint. *See Gomez*, 623 F.3d at 271.

Importantly, the Court notes that the cases discussed herein are cases in which courts considered whether there was reasonable suspicion to conduct a stop. Here, the Court must determine whether probable cause existed for a warrantless arrest. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). To determine probable cause, the Court looks to "veracity" or "reliability" and the informant's "basis of knowledge." *Id.* at 233. These elements are "relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* The veracity of persons supplying anonymous tips, as here, is "by hypothesis largely unknown, and unknowable." *Id.* at 238. An informant's "detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand," however, "entitles his tip to greater weight than might otherwise be the case." *Id.* at 235.

The Court acknowledges that the veracity of the anonymous tipster here is "unknowable." *See id.* at 238. The tipster's detailed description of their first-hand

13

observation of alleged wrongdoing, however, entitles the tip to greater weight. *See id.* at 235. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Lincoln v. Turner*, 874 F.3d 833, 842 (5th Cir. 2017). The Court finds that the tipster provided sufficient information for a reasonable person to conclude that the Defendant had committed or was committing an offense—flashing a gun at children.

The Court notes that this is a close case. The Court cannot judge the veracity of the person supplying this anonymous tip because the tipster's identity is unknown. *See Gates*, 462 U.S. at 238. The officers did not engage in independent investigation to corroborate the tip prior to arresting Defendant. Additionally, the tipster provided no "predictive information." *See Florida v. J.L.*, 529 U.S. 268, 271 (2000); *see also Alabama v. White*, 496 U.S. 325, 325 (1990). Nonetheless, the tipster allegedly observed Defendant actively engaged in possible ongoing criminal activity. *See Navarette v. California*, 572 U.S. 393, 399 (2014). Additionally, the tipster's call was contemporaneous with the alleged criminal activity, a factor weighing in favor of the reliability of the tip. *See id.* at 399–400. The tipster also described recent activity regarding an open criminal act in the community, which indicated some exigency. *See United States v. Gomez*, 623 F.3d 265, 271 (5th Cir. 2010). Under the totality of the circumstances, the Court finds that the tip was sufficiently reliable in this case to provide Office Alvarez with probable cause to arrest the Defendant. *See Lincoln v.*

*Turner*, 874 F.3d 833, 842 (5th Cir. 2017). For these reasons, Defendant's Motion to Suppress will be denied.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Suppress (Doc. 34)** is **DENIED.**

Baton Rouge, Louisiana, this 11th day of March, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**